You're on the record, my name is Robert Koch and I'm representing RFI Industries. The RFR Century Settlement Agreement required Century to purchase certain amounts of flangeway filler from RFI. And pursuant to the settlement agreement, Century ordered the flangeway filler. They sold it, they profited from it, but then they refused to pay RFI for it. Since Century did not pay for the filler, the patent license in the settlement agreement did not take effect. Since there was no patent license, Century's act of selling the filler, knowing that it would be installed in an infringing manner, constituted induced and contributory patent infringement. RFR sued Century in federal district court for patent infringement. When Century still refused to pay, RFR reconsidered its strategy and decided that a quicker way to proceed would be to file a petition to show cause for violation of the permanent injunction. RFR then filed a non-suit without prejudice on the patent infringement suit that had been filed and did so before Century effectively served RFR with an answer. The district court refused to recognize this non-suit without prejudice and granted Century summary judgment on the pleadings, holding that the patent exhaustion doctrine applied and that there was an implied license between RFR and Century. The court also found the case to be exceptional and awarded attorney's fees under Section 285. There are three issues to be discussed. One is jurisdictional. Did the court have jurisdiction to make its rulings after RFR filed a non-suit without prejudice? Second, whether the patent exhaustion doctrine applied, whether there was an implied license, and whether judgment on the pleadings was properly granted. And third, whether attorney's fees should have been granted under Section 285. First issue, lack of jurisdiction. Before Century effectively served RFR with an answer. RFR filed a non-suit without prejudice and under the rules, under this circuit case law, this effectively denied the trial court jurisdiction to proceed any further. The trial court seemed to think that the faxing of the answer to your office complied with the requirements. Yes, Your Honor. In the order, the district court, I believe, used the word deem or deemed that the faxing of the answer was effective service. However, the trial court followed no accepted or recognized legal principles by deeming that the faxing of an answer constituted effective service. And under the federal rules, and under the case law, the faxing of an answer does not constitute effective service under Rule 5. Unless the parties agreed to make some agreement as a combination of the two, right? Yes, Your Honor. The proposition is even though in the other case they're making such a combination, it didn't extend to this particular case. Exactly, Your Honor. There was a written agreement to accept fax in an earlier case. Same parties. Involved an additional party. In fact, the- Is the earlier case the one you just heard in argument? Yes, Your Honor. It is. And the issue is clearly overlapped, correct? Well, in the first case, RFR sued Rex High for patent infringement. And then Rex High brought in Century on an independent claim. In the second claim, Rex High is not involved. RFR sued Century for patent infringement. So the agreement for the other case for such informal service was between Rex High and RFR, not between Century and RFR? Initially, the discussions occurred between RFR and Rex High because it was on a discovery issue, my recollection. And then I informed them, my recollection, that service by fax was not sufficient. This was a written agreement. We entered into a written agreement. And Mr. Emerson's name was added as a party since he was a party to the case. But there was a written agreement in the other case. And if anything, this written agreement should have put Century on notice that if they wanted to have an agreement or if they wanted to serve by fax, there had to be a written agreement to do that. And that's required by the rules. And there's no written agreement. I believe it's under the Federal Rules, Your Honor, but I'd have to double-check that. I can... The two cases were never consolidated? No, Your Honor. Never consolidated. And furthermore, there was no reason for Century to believe that service by fax would be sufficient in the new case because RFR never accepted service by fax in the new case and never implicitly agreed to service by fax. Was there some delay in your pointing that the deficiency in service... I mean, at what point did you say, no, no, no, no, I can raise this issue? My recollection of the sequence of events was that a complaint and summons... The complaint and the return of summons was filed. And then Century faxed its answer, followed the court. The court issued a scheduling order. And I responded to the scheduling order of the document. In the very first sentence, I said, we desire to non-suit the case without prejudice. The very next document, I stated that. So... The question was the elapsed time between receipt of the answer and being active on the assumption that the faxed answer was of no effect. I'm not certain of the calendar time. But as far as the filing of documents and the first document that would indicate whether I was going along with the concept that we could have service by fax without an agreement would have been the very next document I filed to court. And that was the document in which I announced that we wished to non-suit the case without prejudice. But in that document, you didn't articulate, and we're allowed to do that now because we never officially have the ability to submit the answer. That wasn't articulated in the document. I don't have a clear recollection of one way or the other on that. That might be implicit in the document because I'm filing it under a rule that allows me to do that before Century's properly served RFR answer. Century has also raised the ECF system, and I've explained that in the brief, that there's a distinction between the ECF system and the ENT system. Assuming arguendo. Was the other case, the earlier case, 1587, designated for the ECF system? I don't have a clear recollection. This one was not? This one was not. Which is the official one? I'm getting to the evidence. Which is the official one, which is not? I mean, the argument here is that it was. The ECF system... That's the court system that you agreed would have been official if you had been involved. Yes, ma'am. What's the other system called? The ENT. I think that's electronic notice of transmission. In ENT, you do not consent in writing that you have received... ECF specifically says that it suffices the rule of personal service for the purposes of Rule 5. Yes, and it requires the attorneys to consent in writing that electronic notification is service, but that was never done in this particular case. Assuming arguendo that there's jurisdiction, the judgment on the pleadings was improper for two reasons. First, the patent exhaustion doctrine does not apply, and second, no implied license was granted. Under the patent exhaustion doctrine, one of the patents and claims filed upon by RFR was a method claim, and this court has held clearly that the patent exhaustion doctrine does not apply to the method claims. Also, the patent exhaustion doctrine requires payment or compensation to the patentee, and there was no payment made by censure. So clearly, under the case law, the patent exhaustion doctrine does not apply. On implied license, the settlement agreement clearly states that the sale of pop-down filler by RFR to censure is not intended to create an implied license under the patent. The district court has completely ignored this clause when it made its ruling. This court has held that implied license is granted, but the circumstances of the sale plainly indicate that the grant of the license should be inferred. And here, that's just impossible to infer that because of the express agreement between RFR and censure that the sales- There was an express license. Pardon me? There was an express license. You're arguing there was no implied license, but there was an express license. If there was an express license, if censure had made payment, had purchased the flange-weight filler, censure did not purchase, they did not pay. Now, censure has made an argument that there was an express license because they purchased it using the UCC definition, but the UCC should not apply to this settlement agreement because under the predominant purpose test, the predominant purpose of the settlement agreement was to settle the case between the parties and not for the sale of goods. Mr. Oak, have either of these cases ever been the subject of mediation? Yes, Your Honor. Thank you. If you prevail in either or both of your appeals this morning, even in part, this litigation will drag on more. Everybody will spend a lot more money and a lot more time, and courts will spend more time, magistrate judges, district judges, court of appeals judges in the subsequent appeal. Maybe it's in the interest of the parties, and they certainly have a right to access the system if they want to exercise rights that they have, but it doesn't look like a very businesslike way to settle an execution. Just an observation. Well, Your Honor, if I can make a brief comment on that. We have in this case an issue, an identification issue, that has basically been a threshold issue, and it's an all-or-nothing issue. And it's unfortunate that the case is proceeded like this. I agree. But it's a threshold issue. But if that's an all-or-nothing issue, let's assume hypothetically. I mean, in this case, what you're trying to do, and you wanted to get your case out of this court, is pursue this issue in another form. Yes. But if this issue implies the identification issue of the accused, you said that's all part of this umbrella, that issue has already been decided by the district court. It's going to be decided one way or another, not by us. So what else do you have left to litigate? Well, if there is no certuity of indemnity, which we allege, then the patent infringement issues come to the front. But that would be taken care of in that case, though. I mean, that's the case we just heard earlier. Yes. So what I'm asking for is what's left to litigate if, in this case, if you're allowed to withdraw, you want to preserve your right to withdraw so you can do something else. And I'm asking what else is there to do outside of the indemnification issue that's an issue in the first place. Yes. Yes, Your Honor. We have a flange way filler made by RFR that has been sold and it's installed in the field. RFR was never paid for it, so it's infringing. And so what we would do is we would pursue a petition to show cause for a contempt violation. Contempt because of failure to pay. Well, not directly. So you want to say you want to pursue contempt under the settlement agreement, but say because of the failure to pay, the mail was infringed. I'm not understanding. Yes. The failure to pay is the subject of the arbitration. That's for breach of contract. The failure to pay had the effect of not of the patent license not coming into effect, which resulted in infringement and a violation of the permanent injunction. Two separate things. And two separate causes of action. One for patent infringement and contempt, one for breach of contract. But I'm having a hard time seeing why the infringement issue isn't part and parcel of the indemnification issue in your earlier case. No? Well, they are related, but they're not exactly the same because you have different remedies for patent infringement than you have for breach of contract. And given the length of time that the flange-weight filler has been in place, I would argue that you could have breach of contract damages, and you could have remedies, additional remedies, under patent infringement or for violation of the injunction. The last issue that the case is not exceptional under 285, the court granted judgment on the pleadings because of the patent exhaustion doctrine, clear error. The court then went on to say that because RFR failed to cite a single case that a patentee must receive payment before the patent exhaustion doctrine will apply, RFR knew or should have known the case was baseless. RFR cited numerous cases. U.S. Supreme Court, this court, district courts that did the patent exhaustion. Under the patent exhaustion doctrine, you need payment. So under the clear error, because the award of attorneys fees is based on clear error, is abuse of discretion. Thank you very much. All right. Thank you, Mr. Chairman. Thank you. May it please the court. This is all one big dispute. Again, the rise of the original case. When RFR sued Red Tie for infringement. They sued us. We sought indemnity. They refused to indemnify us. We withheld some payments. RFR filed an arbitration. RFR filed this patent infringement case that is before you. And RFR filed a contempt action. All four of these things were going on simultaneously. Your reference is in the red brief, too, on this election. Your argument with respect to the electronic filing system. Do you agree with having red brief? Yes. Yes. Yes. Yes. I made an assumption that it turned out to be incorrect. So what's left? I mean, if you weren't notified, if that wasn't sufficient, if the court's filing system wasn't done in sufficient to satisfy the notice requirements with respect to your answer, why are you still here arguing about whether or not there was no jurisdiction? Because under the law, the courts can excuse improper service of a process or improper service of a document if there was actual receipt and there are extraordinary circumstances. There is no dispute before the court that there was actual receipt. And we understand that that alone does not create exceptional circumstances. Exceptional circumstances in this case are as follows. First, like I said, this is all one dispute. But the first point is you're saying the district court has discretion, even if service was not proper under the rules. The district court has discretion to say, OK. Yes, Your Honor. We are. They can find there are exceptional circumstances that exist that excuse the improper service of this document. And the exceptionals. And so I've cut you off. Right. Exceptional circumstances are here. Look, this is one, again, this is one dispute. Very exclusive. Well, I'm getting to that. That is the, there was a written agreement between the parties in the Rex Hyde, the underlying Rex Hyde case, that said we are going to serve each other and accept service based on facsimile service. And we agree that didn't explicitly say for any other future lawsuits that arise out of this. But we were in a pattern of serving one another through facsimile. In March of 2005, when this happened, we were. Mr. Anderson, doesn't that show that when you knew how to do it in one suit, you did it, but you didn't do it in the other? Well, we knew how to do it by fax in person. No, but I mean, you knew how to make an agreement that service by fax would be accepted. That's right. And it was an oversight on our part, absolutely. We, I wish I could have that back. And why isn't it fatal that you didn't get an agreement from Mr. Oak that he would accept service by fax? Because absent that agreement, it looks like there was never proper service. And in the absence of proper service of an answer, the plaintiff has an absolute right under the civil rules to voluntarily dismiss his case. And the court has no discretion to block that. Because the courts have found that the improper service can be excused when there is actual receipt and exceptional circumstances. And here, not only do we have the written agreement, not only do we have the course of conduct throughout the years preceding this. You know, there were two and a half months in between where we dealt with each other regularly over handling the scheduling order. I filed a motion to transfer this case, which was so closely related to the Rek'sai case that it was transferred. You're saying things you've mentioned amount to exceptional circumstances? I'm saying that it was within the court's discretion, yes sir, to find that given that we had a written agreement. In a different case? A different case, but it was very closely related. Yes, Your Honor. But when the cases aren't consolidated, it would seem to matter how closely related they are. They weren't. An agreement in case A never binds anybody to anything in case B in the absence of consolidation. And we're not saying that that piece of paper bound them. We're saying that that piece of paper, combined with the delay, combined with the fact that we were, this is all one dispute, and papers were flying back and forth. This was March of 2005, right before our trial. Papers were flying back and forth. If you look at the docket sheets, and that a party that files a case that is on its face frivolous to be able to escape its responsibility, its accountability to the courts, simply by saying, well, we got it two different ways, but it wasn't precisely proper, shouldn't stand. And that's part of our argument as well. So I can. I still don't quite understand what is extraordinary. They got it. You sound quite right. They got it quite right. That's undisputed. They're entitled under the rules to be personally served, except when they agree, in writing, to be served non-personally, such as by fact. So I still don't understand how you get around rule five of the rules of procedure. Because of the actual receipt and extraordinary circumstances. What I'm asking is, why do you feel that these circumstances are extraordinary so as to entitle you to not have to comply with rule five? Certainly nothing on their part encouraged you to think that they were waiving rule five. So other than your incorrect assumption, I don't see any justification for not serving them in the normal way to comply with rule five. I'm not claiming that it's justified. What we're arguing here is that the court had discretion to define the extraordinary circumstances. The extraordinary circumstances are the written agreement in this dispute, this underlying dispute, the delay, the nature of their complaint, the course of conduct between the parties. I'm not saying that we should be excused. I'm saying they should not be able to evade responsibility for filing a frivolous lawsuit on these grounds. The way rule 41A1 is written, if I file a frivolous lawsuit, and the next day I file a voluntary dismissal, I get away with filing a frivolous lawsuit because the rule entitles me, in that scenario, to drop the case on day two. Maybe the rule is stupid because it allows somebody to file a frivolous lawsuit and not be punished for it, but that seems to be what the rule allows, nevertheless. But in this case, this case differs a little bit because they were served, albeit improperly. They were. This isn't a case where they realize their mistake and then, oh, we need to dismiss this case under rule 41. It's a case where we went along for two and a half months. But if that were the standard, then the rule would mean absolutely nothing. I mean, what do you mean? If it would mean absolutely nothing, why not remove it? It wouldn't mean absolutely nothing. If he had done what Chief Judge Michelle just mentioned, and that is file a lawsuit and then they dismiss it on their own under rule 41, we wouldn't be here. The fact remains that we answered, albeit improperly, and went down the road a bit. And then they try to evade responsibility for filing an underlying lawsuit by dismissing it without prejudice. That's a big difference. So your answer is we should construe the rule as saying it requires a certain amount of service except if you don't comply with it. And that's fine. No, Your Honor. I mean, and I'm not sure how you're construing this rule. I'm construing it the way the courts did in the cases I cited in my brief, which found that if there's actual service in extraordinary circumstances, they will excuse improper service. I'll move next. If you don't have any other questions about service to the merits of the case. Again, we purchased flangely filler from RFR. Submitted a purchase order saying we promise to give you money if you promise to send us rubber flangely filler parts. That's what happened under the terms of the settlement agreement. Any flangely filler we buy from RFR, which we did, is subject to an express license. The court doesn't need to go any further. But there was a promise to pay. I mean, let's assume hypothetically, and I want to know what happened here. But let's assume hypothetically that there was a promise to pay here for Century. There was. Let's assume hypothetically that Century never paid any money to RFR. That's right. Pursuant to the promise to pay. Yes. So we should still enforce that agreement, even in notwithstanding that Century is never paid? Well, I'm not sure which part of the agreement you're talking about. They shipped the product. Right. They did everything they were supposed to. That's right. And let's assume hypothetically that Century did nothing that it was required to do. In other words, they failed to pay. We failed to pay. Why isn't non-performance sufficient justification for RFR to sue for infringement? Because the settlement agreement explicitly says whatever you buy from us comes with a license. Sure, if you pay for it. From Mr. Oates' standpoint, you don't get it for free. That's ridiculous to say you can sign a contract saying, I want a million pounds of this rubber, and I'll pay you a million dollars within 30 days. And then they send you the million pounds of rubber, and you say, well, guess what? We're not going to pay, but we're going to keep the rubber. And then having reached your obligation under the agreement, you want his obligation to extend the license to still be in force. It doesn't seem to make any sense. Why are all bets off when the basic exchange of promises is frustrating because one side doesn't do what it promised to do, pay for the rubber? Because this is a sale of goods. What is a sale? We're saying that there is no sale if there is no payment. That's not what he said. What he said is the case law seems to hold that for patent rights to be extinguished, there has to be payment. And here, it seems clear there was no payment. Therefore, he says, no extinguishment. Well, even under the definitions that he cites, there was payment. OK? Black's Law, which I'm not going to do in this brief, defines purchase as transmission of property founded on a valuable consideration. A promise to pay is valuable consideration. The American Heritage Dictionary, he cites. What? It's valuable consideration even if it's never paid? Yes. Because they have a piece of paper that says, we promise to pay you. So they have a remedy under contract for those monies. Not under the patent laws. Where are they supposed to pursue that remedy, though? With just the court action in Texas here? That's what the judges ruled, yes ma'am. They can pursue it either in the court or if they had any way of arbitration, they could pursue it in arbitration. But a failure to pay does not mean there wasn't a sale or a purchase here. Now, again, under the UCC, there's a sale when the seller transfers title to the buyer. And title is transferred when the seller delivers the product to the buyer. We're not talking about UCC law or commodity sales law. We're talking about the patent law. And when a patentee's right to exclude others evaporates. And the case laws cited by Mr. Oates, he says, requires that in the patent context, there be payment for the goods, not just delivery of the goods. None of the cases say that there must be payment. They certainly do. They use the exact word payment. Well, they say that you get the benefit. He quotes it repeatedly in his brief. I got tired of reading it. They get the benefit of the agreement, which is a promise to pay. There is no case law, he cited no case law, in which a failure to pay was later turned into a patent breach. And if that were the case, I mean, between merchants, normally you've got a 30 or 60-day payment schedule. They ship the product. Say we ship it immediately to our customer. And then we pay 30 days later. Is that infringement in the intervening 30 days? But let's take a hypothetical when five years have passed and you're still not paying. OK. They have rights under contract. They have a piece of paper that's- But in your view, you still have the benefit of the bargain that you have a license for those patented goods. Because the settlement agreement says that anything we buy, any filler that they sell to us, that we purchase, is subject to a license. Comes with a license. We bought it. We sent it to the purchase board and it says, give us that stuff and we'll send you money. And because of the circumstances of this huge dispute that is growing like topsy-turvy, they would help him for various reasons. But that doesn't turn a breach of contract case into a patent infringement case. Likewise, it couldn't be a case for conversion. All right. Thank you. We have your 20-29. Thank you. We'll give you two minutes for rebuttal. May it please the court. Your Honor, on the last issue, the settlement agreement provided the express license. We want to take it back. If there was a purchase and a common meaning of purchase, you've got to provide a compensation. If you don't provide a compensation, then there's no authority to use the flange rate filler. And of course, 271 of the patent statute says, who without authority makes, sells, uses, offers to sell, without authority has to make a patent infringement. So it gives rise to the possibility. On the other side, it says that, well, you have to leave. You have a promise to pay. It's not that you're left hiding behind with nothing and you may get to infringe on what you want. You have, by definition, an obligation to beg, to plead, to pay. So you can run into whatever. Your options are kind of limited, given who you are. But you can go into court or in some forum and enforce that promise to pay. Why isn't that sufficient? You think you have an enforceable right to have them pay you, right? Yes. And we thought that's true. We thought that was true. The failure to pay within the terms specified between the parties. But when Century fails to pay within those terms, then you don't have a license. Why isn't it sufficient that you have a breach of contract suit with all the remedies that come from that? Why do you have to have contract remedies and patent remedies? Why does that make any sense? Because they are two distinct causes of action. And one, on a breach of contract claim, you are entitled to a certain set of remedies. And on a patent infringement claim, you're entitled to another set of remedies. For example, an injunction. Let's assume you run into arbitration. Let's assume this case had turned out differently. So you go before an arbitrator. And the arbitrator says, Century is likely to be worth $2 million. That's what they promised to pay you. And since I haven't paid in 90 days or two years, you get that plus interest. Then would you agree that that's the way it plays out? Then you don't have any other cause of action for infringement because now you've had this agreement enforced. And we have to enforce the license part of it as well? That's an interesting question. And that's one that we addressed, that I addressed in brief. And I believe there's an argument that, given the length of the period of time, you would have contractual remedies for breaching the contract. And in addition, you would have remedies for infringement, the infringement that occurred during that period of time. So you get what? So you say because they argued with the alleged or they allegedly breached the agreement, we get to be paid for what they owed us, including interest. And we get to sue them for infringement. Well, I would say that both causes of action are valid. Now, I would not argue for a double recovery. I would not argue for that. But to the extent you have different remedies under patent infringement... Yeah, but I thought everybody agreed that this stuff was not even being made any different. So the patent remedy and the injunction wouldn't come into play. Hypothetical indicates full payment plus interest because of the delay has been finally made. And what is there left to bring from censure? It's made good on obligations related to it, but they pay an interest amount. Well, first of all, the financial aid filler still is being paid by my client and sold by my client to various... You're the patentee. You can't get an injunction. You don't need an injunction for something that isn't being done by the adverse party. So then only money is an issue. And if they pay the purchase price plus interest, then it looks like on the money side, you've been made whole. Well, the financial aid filler is still being used out there. And so the payment is continuing. And patent... What I would do is file a petition to show cause for violation of the permanent injunction contempt. Under contempt action, you are entitled to additional remedies in addition to breach of contract remedies. So you have two distinct causes of action with distinct remedies, particularly a motion for contempt, where the judge can order additional things to occur. Thank you. All right. Thank you. We'll take the two appeals under advisory.